115336-5

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

JACOB COOPER as Personal
Representative for the Estate of
VALERIE SUSAN BOGLE, on
behalf of the Estate and Survivor
JACOB COOPER,

       Plaintiff,

vs.

CORECIVIC, INC., a private
prison health corporation;
FORMER CITRUS COUNTY
DETENTION FACILITY
WARDEN MIKE QUINN; LAUR
BOEHM, LPN; TINA MELLERT,
LPN; RYAN OSBORN; CANDI
HICKS, LPN; ANNE BRITT, LPN;
SEARS NORTH, MHC; DOES 1-
15, inclusive, in their individual
capacities,

       Defendants.

_____/

Case No. 5:23-cv-650-MSS-PRL

## RYAN OSBORN'S MOTION TO DISMISS
## FIRST AMENDED COMPLAINT

Defendant Ryan Osborn, by and through the undersigned attorneys, and

pursuant to Fed. R. Civ. P. 12(b)(6), moves to dismiss Plaintiff's First Amended

Complaint (Doc. 52) for failure to state a claim, and in support thereof states as follows:

## I. Introduction.

Plaintiff initiated this action on November 1, 2023. Doc. 1. Plaintiff filed a First Amended Complaint on March 29, 2024. Doc. 52. Decedent, Valerie Susan Bogle, was detained at Citrus County Detention Facility ("CCDF") during the events described in Plaintiff's First Amended Complaint. Ms. Bogle died on or around November 2, 2021. Jacob Cooper brings this action on behalf of Ms. Bogle as the Personal Representative of her Estate. *Id*.

Plaintiff brings this action against CoreCivic, a private corporation that owns and operates CCDF pursuant to a contract with Citrus County, Florida, as well as against various named and unnamed individual defendants, including Defendant Ryan Osborn. In the First Amended Complaint, Plaintiff attempts to assert a Fourteenth Amendment deliberate indifference claim (Count I), a Fourteenth Amendment substantive due process claim (Count IV), a wrongful death claim (Count V), an Intentional Infliction of Emotional Distress claim (Count VI), and a Negligent Infliction of Emotional Distress claim (Count VII) against Mr. Osborn for his alleged attempted examination of Ms. Bogle on or about October 31, 2021. Doc. 52 ¶ 79.

Plaintiff seeks (i) compensatory damages for the survivors' emotional distress and for Ms. Bogle's estate, (ii) pre-death damages for pain and suffering "that did not result in death," (iii) punitive and exemplary damages for his § 1983 claims, (iv) costs, and reasonable attorneys' fees under 42 U.S.C. § 1988, and (v) final expenses. *Id.* But Plaintiff's Amended Complaint fails to state a cause of action as to Mr. Osborn pursuant to relevant Eleventh Circuit precedent, and the counts against Mr. Osborn should therefore be dismissed.

## II. Factual Allegations as to Mr. Osborn.

On October 29, 2021, Ms. Bogle was arrested for battery and detained in an isolation cell at CCDF. Doc. 52 at ¶¶ 35, 37. Upon booking, Ms. Bogle was found to be "not safe for nursing staff to assess" and unable to be evaluated by medical due to behavioral issues. *Id.* at ¶ 39. An intake assessment was attempted, but could not be completed because Ms. Bogle was "uncooperative." *Id.* at ¶ 55.

Six hours later, Ms. Bogle was again documented to be "too uncooperative to do intake assessment." *Id.* at ¶ 57. The next day, on October 30, 2021, Ms. Bogle continued to not be able to be seen by medical because she was "not being cooperative and per security, medical is not to see her at this time." *Id.* at ¶ 67. On October 31, 2021, nursing staff were again unable to perform an intake assessment because Ms. Bogle was "being verbally aggressive, kicking at the cell door."

Nursing staff noted that Ms. Bogle was "safe" and they would attempt another assessment at a later time. *Id.* at ¶ 73.

Ten hours later, Mr. Osborn documented that Ms. Bogle could not undergo an intake assessment because per the booking officer, she continued to be a security concern. He noted that an intake assessment was unable to be completed until a second security officer could remove Ms. Bogle from her cell. *Id.* at ¶ 79. This *sole attempted act* forms the basis for Plaintiff's allegations against Mr. Osborn, and his claims that Mr. Osborn should have done more to secure a second officer or alert a mental health professional. *Id.* at ¶¶ 82-86.

Ms. Bogle passed away on November 2, 2021, days after the only time that Mr. Osborn attempted to provide care. *Id.* at ¶ 155. The autopsy concluded that Ms. Bogle died of dehydration. *Id.* at ¶ 156.

### III.   Legal Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.   The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted

unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting in part Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (*citations and quote marks omitted*). "A pleading is insufficient if it offers mere 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Twombly*, 550 U.S. 544, 555. "Courts must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Davis v. Self*, 547 F. App'x 927, 929 (11th Cir. 2013) (*quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007)) (quotation marks omitted).

### IV.    Argument.

#### a. Plaintiff Fails to State a Fourteenth Amendment Deliberate Indifference Claim Against Defendant Osborn.

Plaintiff attempts to bring a Fourteenth Amendment deliberate indifference claim against Defendant Osborn for his one attempted interaction with Ms. Bogle on October 31, 2021. A successful pleading on this theory requires allegations that the inmate suffered an objectively serious medical need, that the defendants intentionally disregarded for that need, and that the wrongful conduct caused an injury. *See Farmer v. Brennan*, 511 U.S. 825, 833 38, (1994); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hill v. Dekalb Regional Youth Detention Center*, 40 F.3d 1176, 1191 n.28

(11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Goebert v. Lee County*, 510 F.3d 1312, 1326 (11th Cir. 2007).  A serious medical need is one that has been diagnosed by a physician as needing treatment or one for which even a layperson would recognize the need for a doctor's care.  *See Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999); *Aswegan v. Henry*, 49 F.3d 461, 464 (8th Cir.1995) (stating that a serious medical need is one obvious to layperson or supported by medical evidence, like a physician's diagnosis).  Importantly, for medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

### 1. Plaintiff fails to demonstrate a serious medical need.

First, Plaintiff fails to sufficiently allege that Ms. Bogle suffered from a serious medical need at the time Mr. Osborn attempted to assess her. In this instance, no nursing or medical provider diagnosed Ms. Bogle with a serious medical need prior to Mr. Osborn's attempted evaluation. Indeed, apart from Plaintiff's conclusory assertions, the complaint is devoid of allegations that Ms. Bogle was suffering from a medical need "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Mr. Osborn is alleged to

have reviewed Ms. Bogle's prior nursing assessments, which only documented Ms. Bogle to be uncooperative and verbally aggressive, which are not objectively serious medical needs.

At the time of Mr. Osborn's attempted intake assessment, Ms. Bogle was again uncooperative, but not suffering from an objectively serious medical need. It is only *after* Mr. Osborn's attempted assessment and *after* Ms. Bogle's death that Plaintiff alleges that defendants collectively were aware of Ms. Bogle's dehydration.  But "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). "Each individual defendant must be judged separately and on the basis of what that person knew. *Vina Dang v. Seminole Cty.*, 871 F.3d 1272, 1280 (11th Cir. 2017). As there is no allegation that Ms. Bogle suffered from a serious medical need at the time of Mr. Osborn's attempted intake assessment, Plaintiff's deliberate indifference claim fails and must be dismissed.

### 2. Plaintiff fails to demonstrate that Defendant acted with deliberate indifference toward a serious medical need.

Second, even if Ms. Bogle had an objectively serious medical need, Plaintiff fails to sufficiently allege that Mr. Osborn acted with deliberate indifference towards that need. To establish this element, "the defendant must: (1) have subjective knowledge of a risk of serious harm; (2) disregard the risk; and (3) display conduct beyond mere negligence." *Shaw v. Allen*, 701 F. App'x 891, 893

(11th Cir. 2017) (citation omitted). "In other words, a plaintiff must demonstrate that the defendant was aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and actually disregarded that risk." *Id.* (citation omitted). Here, Plaintiff has failed to do so.

In this instance, Plaintiff fails to allege that Mr. Osborn had subjective knowledge of a risk of serious injury to Ms. Bogle, and that he specifically disregarded that risk. Mr. Osborn had one attempted interaction with Ms. Bogle, in which he documented that Ms. Bogle was too uncooperative to complete an intake assessment. His one attempted interaction is insufficient to demonstrate that he had knowledge of Ms. Bogle's serious medical need, "or with such knowledge [was] deliberately indifferen[t] to" Ms. Bogle's condition. *McCrimmon v. Centurion of Florida, LLC*, 2021 WL 424348 at *5-7, case no. 3:20-cv-36-BJD-JRK, (M.D. Fla. Feb. 8, 2021)(dismissing counts against individual nurses where nursing defendants encountered the decedent one or more times and the allegations did not explain "whether or how they each knew" the decedent needed better or more care).

Moreover, Plaintiff cannot establish the subjective knowledge requirement by alleging that Mr. Osborn *should* have known that Ms. Bogle was suffering from an undiagnosed condition. Rather, the precedent is clear that *actual knowledge* of a serious medical need is required.  *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir.

2008) ("No liability arises under the Constitution for an official's failure to alleviate a significant risk that he *should* have perceived but did not . . . . As such, imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference."). Additionally, Mr. Osborn's alleged failure to inform another provider about Ms. Bogle's condition, would constitute negligence, not deliberate indifference. *McCrimmon* 2021 WL 424348 at *5; *Clark v. Tucker*, 2014 WL 68646 at *4 (M.D. Fla. Jan. 8, 2014) (allegations the nurses did not adequately monitor decedent's condition and did not request another trained doctor to examine decedent, despite the fact that decedent was getting progressively sicker over the three days before his admission to the infirmary may establish the Nurses' negligence, but they are insufficient to establish conduct that is more than gross negligence, even at the motion to dismiss stage.)

Because Plaintiff has failed to allege facts sufficient to evidence the "subjective knowledge" requirement that would "raise a right to relief above the speculative level," Count I of the First Amended Complaint must be dismissed as to Mr. Osborn.

### 3. Plaintiff fails to demonstrate causation between Defendant's actions and his purported injury.

Finally, Plaintiff's deliberate indifference claim also fails on the causation element as Plaintiff fails to sufficiently allege causation between Mr. Osborn's one attempted interaction with Ms. Bogle and Ms. Bogle's purported injury, i.e. her

death. Plaintiff attempts to impute causation as to Mr. Osborn for the alleged acts of all defendants as a whole. However, absent from the First Amended Complaint are sufficient allegations that Mr. Osborn's *individual* alleged indifference caused the death of Ms. Bogle. Thus, Plaintiff's deliberate indifference claim fails to sufficiently allege causation, and his claim against Mr. Osborn should be dismissed.

### b. Plaintiff Fails to State a Fourteenth Amendment Substantive Due Process Claim Against Defendant Osborn.

Next, Plaintiff alleges that Defendants violated his Fourteenth Amendment substantive due process rights by depriving him of his right to companionship and society with his mother.  (Doc. 52 at ¶ 228.)  However, such a claim is not cognizable.

It is well established that a § 1983 claim must be based on a deprivation of Plaintiff's *own* constitutional rights, not on a deprivation incidental to Defendants' alleged conduct.  *See Robertson v. Hecksel*, 420 F.3d 1254, 1259 (11th Cir. 2005) (finding that there is no substantive due process right between a mother and her adult child where the alleged deprivation was incidental to the defendant's actions); *Meus v. Geo Group*, 2012 WL 42406, at *3 (S.D. Fla. Jan. 9, 2012) (dismissing § 1983 claim for failure to state a claim where it was unclear whose rights plaintiffs sought to vindicate, what constitutional right was allegedly violated, and whether the decedent was a minor child, explaining: "Indeed, if the decedent was not a minor, the parents of the decedent cannot bring claims on behalf of the decedent

pursuant to section 1983 or state law wrongful death."); *Debrosse v. Bradshaw*, 2010 WL 773826, at *3 (S.D. Fla. Mar. 5, 2010) (dismissing claim by mother for death of minor child, finding incidental deprivation of the mother's constitutional rights caused by the underlying deprivation of the decedent's rights was insufficient to state a claim).

Here, any alleged deprivation Plaintiff suffered was merely incidental to Defendants' alleged violation of Ms. Bogle's constitutional rights rather than his own. Moreover, Plaintiff, as an adult child, does not have a substantive due process interest in a relationship with his mother. *See Robertson*, 420 F.3d at 1262 ("While the parent/adult child relationship is an important one, the Constitution does not protect against all encroachments by the state onto the interests of individuals."). Thus, Plaintiff's substantive due process claim should be dismissed with prejudice at the outset.

However, even if Plaintiff had a cognizable Fourteenth Amendment substantive due process claim, he still faces a "high bar" because "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) (quotations omitted). "Even intentional wrongs seldom violate the Due Process Clause . . . and only the most egregious official conduct can be said to be arbitrary

in the constitutional sense." *Id.* (internal quotations and citations omitted). Plaintiff's allegations against Mr. Osborn cannot be characterized as "arbitrary or conscience shocking in a constitutional sense." *Id.; see also* IV.a.2, *supra.* Even if Plaintiff's substantive due process claim was cognizable, he has failed to sufficiently plead it against Mr. Osborn, warranting dismissal.

### c. Plaintiff's Wrongful Death Claim Must Be Dismissed for Plaintiff's Failure To Comply With The Requirements Under Chapter 766, Florida Statutes.

Florida Statute Chapter 766 sets out certain pre-suit notice and screening requirements, which "must be met in order to maintain a medical malpractice or medical negligence action against a health care provider." *J.B. v. Sacred Heart Hosp. of Pensacola*, 635 So. 2d 945, 948 (Fla. 1994). Under Florida's pre-suit requirements, a potential plaintiff first must serve on a potential defendant notice of intent to initiate litigation for medical negligence. Fla. Stat. §766.106(2)(a). With the notice, a potential plaintiff is required to submit a "verified written medical expert opinion from a medical expert as defined in s. 766.202(6)" which supports a claim of medical negligence. Fla. Stat. § 766.203(2)(b). "Accordingly, if the required pre-suit notice is not given to a health care provider, the complaint is properly dismissed." *Goldfarb v. Urciuoli*, 858 So. 2d 397, 399 (Fla. 1st DCA 2003). Importantly, "chapter 766's notice and pre-suit screening requirements apply to

claims that arise out of the rendering of, or the failure to render, medical care or services." *J.B.*, 635 So. 2d at 949.

Chapter 766 defines medical malpractice as "a claim, arising out of the rendering of, or the failure to render, medical care or services." Fla. Stat. 766.106(1)(a). The Florida Legislature has further provided that proving a medical malpractice claim requires establishing that the allegedly negligent act "represented a breach of the prevailing professional standard of care," as testified to by a qualified medical expert. Id. § 766.102(1); see id. § 766.102(5). The Florida Supreme Court explained that the inquiry for determining whether a claim sounds in medical malpractice "is twofold: (1) whether the action arose out of 'medical ... diagnosis, treatment, or care,' and (2) whether such diagnosis, treatment, or care was rendered by a 'provider of health care.'" *Silva v. Southwest Florida Blood Bank, Inc.*, 601 So.2d 1184, 1186 (Fla. 1992). The Florida Supreme Court determined that the words "diagnosis," "treatment," and "care" should be "accorded their plain and unambiguous meaning," explaining that, "[i]n ordinary, common parlance, the average person would understand 'diagnosis, treatment, or care' to mean ascertaining a patient's medical condition through examination and testing, prescribing and administering a course of action to effect a cure, and meeting the patient's daily needs during the illness." *Id.* at 1187.

Moreover, "in order to determine whether the presuit requirements of chapter 766 apply, we look to whether the plaintiff must rely upon the medical negligence standard of care as set forth in section 766.102(1)." *Integrated Health Care Servs., Inc. v. Lang–Redway*, 840 So. 2d 974, 980 (Fla. 2002) (emphasis added). Florida district courts of appeal have explained that the wrongful act from which the claim arises "must be directly related to the improper application of medical services and the use of professional judgment or skill." *Joseph v. Univ. Behavioral LLC*, 71 So. 3d 913, 917 (Fla. 5th DCA 2011). Stated another way, "[t]he injury must be a direct result of receiving medical care or treatment by the healthcare provider." *Quintanilla v. Coral Gables Hosp., Inc.*, 941 So. 2d 468, 469 (Fla. 3d DCA 2006). Further, Florida law provides that "[p]resuit investigation of medical negligence claims ... shall apply to all medical negligence claims," *including wrongful-death claims under section 768.19*, F.S. § 766.203(1)(a); see also id. § 766.201(2) ("Presuit investigation shall be mandatory and shall apply to all medical negligence claims and defenses.").

Here, Plaintiff brings a Wrongful Death negligence claim against Mr. Osborn, a Florida statutorily defined medical provider, for the care and treatment of Ms. Bogle while detained at CCFD. Plaintiff even specifically alleges that Mr. Osborn was "tasked with providing medical care" and that he breached his duty of reasonable care to Ms. Bogle, and that his negligence resulted in her death. Doc.

52. at ¶¶ 15; 241-243. Thus, Plaintiff's allegations clearly arise out of a medical diagnosis, treatment, or care as Plaintiff's purported injury was a direct result of the failure to provide medical care to Ms. Bogle under § 766.106(1)(a). As such, Plaintiff's wrongful death claim invokes the question of professional standards of care for medical negligence and Plaintiff is required to adhere to the Chapter 766 presuit requirements. *See, Phelps v. Delphi Behavioral Health Group, LLC*, 2021 WL 8895134 at *3-4 (S.D. Fla. 2021)(dismissing plaintiff's state law wrongful death negligence action against defendant, a drug and alcohol addiction treatment facility, for their negligence in causing decedents to suffer from drug dependency and die from a drug overdose, because plaintiff failed to adhere to the Chapter 766 presuit notice requirements.); *Dempsey v. Ford*, 2021 WL 8533034 at *4 (N.D. Fla Sept. 24, 2021)(dismissing wrongful death claim "because the allegations in the wrongful death claim relate directly to medical diagnosis, treatment, and care (or lack thereof) by a health care provider . . ., the claim is a medical negligence claim that is subject to the presuit notice requirements.").

Thus, in order to prove his claim, Plaintiff would have to show that the medical providers breached the prevailing professional standard or care, in light of all relevant surrounding circumstances, recognized as acceptable and appropriate by similar healthcare providers. In order to be successful, Plaintiff must show that the alleged actions deviated from an accepted standard of care

because Plaintiff's alleged injury was directly inflicted by the lack of medical care by the medical providers at CCFD.

Because Plaintiff does not allege generally that he satisfied Chapter 766's pre-suit notice and screening requirements, the claim must be dismissed. *See, e.g., Cent. Fla. Reg'l. Hosp. v. Hill*, 721 So. 2d 404, 406 (Fla. 5th DCA 1998) (holding that the trial court departed from the essential requirements of the law when it refused to dismiss the plaintiff's complaint for failure to attach a corroborating, verified medical expert opinion); *Archer v. Maddux*, 645 So. 2d 544, 547 (Fla. 1st DCA 1994) ("If a complaint is filed without a corroborating expert opinion, the defendant's proper remedy is a motion to dismiss."). Moreover, the time to comply with Chapter 766's presuit requirements has passed, and Plaintiff's claim must be dismissed with prejudice as Plaintiff is over the two year statute of limitations to initiate the Chapter 766 presuit investigation and bring a medical negligence/malpractice claim. § 95.11(4)(b), Fla. Stat.

### d. Plaintiff's Intentional Infliction Of Emotional Distress Claim Must Be Dismissed.

Plaintiff alleges a claim for Intentional Infliction of Emotional Distress ("IIED") against all defendants for both "Plaintiff's survivors . . . severe injuries" and for Ms. Bogle's injuries. (Doc. 52 at ¶¶ 257, 259). The elements of the claim are well-recognized:

> To state a cause of action for "intentional infliction of emotional distress, a complaint must allege four elements: (1) deliberate or reckless infliction of mental suffering; (2) outrageous conduct; (3) the conduct caused the emotional distress; and (4) the distress was severe. *Dependable Life Ins. Co. v. Harris,* 510 So.2d 985, 986 (Fla. 5th DCA 1987). Behavior claimed to constitute the intentional infliction of emotional distress must be "'so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency.' *Ponton v. Scarfone,* 468 So.2d 1009, 1011 (Fla. 2d DCA 1985) (quoting *Metropolitan,* 467 So.2d at 278). In applying that standard, the subjective response of the person who is the target of the actor's conduct does not control the question of whether the tort of intentional infliction of emotional distress occurred. *Id.* Rather, the court must evaluate the conduct as objectively as is possible to determine whether it is "'atrocious, and utterly intolerable in a civilized community.'" *Id.* (quoting *Metropolitan,* 467 So.2d at 278). Whether conduct is outrageous enough to support a claim of intentional infliction of emotional distress is a question of law, not a question of fact. *Gandy v. Trans World Computer Tech. Group,* 787 So.2d 116, 119 (Fla. 2d DCA 2001); *Ponton,* 468 So.2d at 1011.

> *Liberty Mut. Ins. Co. v. Steadman*, 968 So. 2d 592, 594–95 (Fla. 2d DCA 2007).

It is not enough for a complaint to allege the elements of this particular cause of action. As explained in *Liberty Mutual*:

> The real issue in this case is not whether Steadman's complaint contains all the elements of a claim for intentional infliction of emotional distress—it does—but whether the pleaded facts ascend, or perhaps descend, to a level permitting us to say that the benchmarks enunciated in *Metropolitan* have been met.

> *Liberty Mut.*, 968 So. 2d 595 (cleaned up).

Plaintiff's shotgun approach to pleading an IIED claim is improper and attempts to impute the entirety of the actions of all defendants onto each individual defendant. The allegations in the First Amended Complaint, especially

as they pertain to Mr. Osborn, do not approach outrage, exceeding the bounds of decency, atrocious, or utterly intolerable conduct in a civilized community. Rather, as alleged, Mr. Osborn encountered Ms. Bogle once, and was unable to do a medical evaluation due to Ms. Bogle's uncooperative state. Mr. Osborn's inability to complete an intake assessment does not rise to outrageous conduct. This claim, too, should be dismissed. *Hoffman v. Beseler*, 2017 WL 8751750, at *12 (M.D. Fla. Aug. 17, 2017) (dismissing IIED claims at motion to dismiss stage after determining that conduct was not sufficiently outrageous to support a claim).

## V.    Plaintiff's Negligent Infliction Of Emotional Distress Claim Must Be Dismissed.

To the extent that Plaintiff is attempting to bring a claim for negligent infliction of emotional distress ("NIED"), his claim also fails. That legal theory only allows a family member *who witnessed*, in some fashion, the defendant's negligent act causing injury to another member of the family, to recover for a physical injury brought on by the emotional stress of witnessing the negligent act committed on that family member.  In *Zell v. Meek*, 665 So. 2d 1048, 1054 (Fla.1995), the Florida Supreme Court explained:

> We reaffirm our qualification of the foreseeability test and restate, consistent with *Champion*, the elements required to allege a cause of action for negligent infliction of emotional distress:
>
> (1) the plaintiff must suffer a physical injury;
> (2) the plaintiff's physical injury must be caused by the psychological trauma;

(3) the plaintiff must be involved in some way in the event causing the negligent injury to another; and

(4) the plaintiff must have a close personal relationship to the directly injured person.

If a plaintiff has suffered a physical impact from an external force, recovery for emotional distress stemming from the incident during which the impact occurred is permitted. *Malverty v. Equifax Info. Servs., LLC,* 407 F. Supp. 3d 1257, 1265 (M.D. Fla. 2019) (internal citation omitted). But if a plaintiff has *not* suffered a physical impact, emotional distress must be manifested by physical injury, the plaintiff must have been involved in the incident, and he must have suffered the emotional distress and accompanying physical impairment within a short time of the incident. *Id.* at 1265–66.

In this instance, Plaintiff is asserting a NIED claim as Personal Representative of his mother's estate. Specifically, he claims that Ms. Bogle suffered physical injuries at CCDF which caused *her* psychological trauma, and that those injuries were caused by Defendants' alleged negligence. (Doc. 52 at ¶¶ 262-272.) Plaintiff cannot assert an NIED claim based upon Ms. Bogle's injuries and death. NIED claims are meant to compensate those who have *witnessed* the death or serious injury of a loved one, not to compensate those who have died. *See Zell*, 665 So. 2d at 1050. Plaintiff's NIED claim on this theory should be dismissed with prejudice.

Plaintiff also confusingly alleges that, as a direct and proximate result of the Defendants' allegedly outrageous behavior, "Decedent's Survivor has suffered severe injuries."  (Doc. 52 at ¶ 270.)  It is unclear who Plaintiff is referring to by "Decedent's Survivor."  (*Id.*)  If he is referring to himself, he cannot assert this claim as Personal Representative given that he lacks standing to sue for the benefit of an individual outside of the wrongful death context.  *See* Fla. Stat. § 733.612(20) (limiting Personal Representative's authorized lawsuits to protect the estate, the decedent's property, or the personal representative); Fla. Stat. § 768.20 (Personal Representative has sole authority to bring a wrongful death claim).  If Plaintiff is attempting to assert an NIED claim in his individual capacity, his claim also fails because there are no allegations establishing that he witnessed or was involved in the event causing Ms. Bogle's death, or that he suffered any sort of physical impact or physical injury resulting from emotional distress.  (Doc. 52 at ¶ 270-271) *Malverty*, 407 F. Supp. 3d at 1265; *see also Godelia v. Doe 1*, 881 F. 3d 1309, 1322–23 (11th Cir. 2018) (dismissal of NIED claim required where plaintiff failed to allege physical injury).  As such, Plaintiff's NIED claim should be dismissed with prejudice.

## VI.  Plaintiff Is Not Entitled To Pre-Death Pain And Suffering Damages.

Under the Florida Wrongful Death Act, "[w]hen a personal injury to the decedent results in death, no action for the personal injury shall survive, and any

such action pending at the time of death shall abate." Fla. Stat. § 768.20. Indeed, the Wrongful Death Act serves to "transfer pain and suffering claims from the decedent to the survivors." *Capone v. Phillip Morris USA, Inc.*, 116 So. 3d 363, 375 (Fla. 2013). It does not provide for the survival of a decedent's claim for pre-death pain and suffering. *Martin v. United Sec. Srvcs., Inc.*, 314 So. 2d 765, 770 (Fla. 1975)

Here, Plaintiff requests pre-death pain and suffering damages for injuries that did not result in death. (Doc. 52 at ¶ 274(c).) Plaintiff's attempt at parsing out damages based on alleged injuries not resulting in death is improper and are not permitted by the statute given that Ms. Bogle's injuries allegedly resulted in death. Fla. Stat. § 768.20. Accordingly, Plaintiff's demand for pre-death pain and suffering damages that did not result in death should be dismissed.

Furthermore, the Florida Wrongful Death Act controls the damages available in a § 1983 action where the constitutional deprivation resulted in death. *Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1334–35 (N.D. Fla. 2017); *see also Est. of Whidden v. Armor Corr. Health Servs., Inc.*, 2019 WL 12528978, at *5 (M.D. Fla. Sept. 5, 2019 ("[U]nder 42 U.S.C. § 1988, the [Florida Wrongful Death Act] controls the damages available in a § 1983 action where the constitutional deprivation resulted in death."). Because the Florida Wrongful Death Act does not provide for survival of pre-death pain and suffering damages, Plaintiff's request for recovery of pre-

death pain and suffering damages in connection with his § 1983 claims should also be dismissed.

### VII.   Plaintiff is Not Entitled to Punitive Damages.

Plaintiff fails to set forth allegations entitling him to punitive damages for the purported actions of Defendant Osborn. Namely, Plaintiff has failed to allege that his conduct was motivated by evil motive or intent or involved reckless or callous indifference to the federally protected rights of others. *Hooks v. Brewer*, 818 F. App'x 923, 931 (11th Cir. 2020) (quoting *Smith v. Wade*, 461 U.S. 30, 55, (1983)). As stated, none of Defendants' actions set forth in the First Amended Complaint rise to the level of being considered evil, reckless, or callously indifferent. Rather, Plaintiff merely disagrees with the level of care provided to Ms. Bogle, which, as discussed, is not a basis for a claim of deliberate indifference nor the basis for an award of punitive damages. As such, his claim for punitive damages must also be dismissed.

### VIII.   Conclusion.

Accordingly, all of the claims against Mr. Obsorn in the Amended Complaint (Counts I, IV, V, VI, and VII) should be dismissed.

### Local Rule 3.01(g) Certification

The undersigned certifies that Peter Bartoszek, co-counsel for Mr. Osborn, conferred with counsel for Plaintiff, Nicolas Jimenez, on May 10, 2024 via telephone. Plaintiff is opposed to the requested relief.

Date: May 13, 2024

/s/ Richards H. Ford
Richards H. Ford (FBN 0288391)
Peter Bartoszek (FBN 1015519
WICKER SMITH O'HARA MCCOY &
FORD, P.A.
390 N. Orange Ave., Suite 1000
Orlando, FL 32801
Phone: (407) 843-3939
Fax: (407) 649-8118
ORLcrtpleadings@wickersmith.com
rford@wickersmith.com
pbartoszek@wickersmith.com
Attorneys for Ryan Osborn