# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## OCALA DIVISION

JACOB COOPER as Personal
Representative for the ESTATE OF
VALERIE SUSAN BOGLE, on behalf
of the Estate and Survivor Jacob
Cooper;

        Plaintiff,

    v.

CORECIVIC, INC., a private prison
health corporation; FORMER CITRUS
COUNTY DETENTION FACILITY
WARDEN MIKE QUINN; LAURA
BOEHM, LPN; TINA MELLERT,
LPN; RYAN OSBORN; CANDI
HICKS, LPN; ANNE BRITT, LPN;
SEARS NORTH, MHC; DOES 1-25,
inclusive, in their individual
capacities;

        Defendants.

**Case No. 5:23-cv-650-MSS-PRL**

## DEFENDANT CORECIVIC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT FOR DAMAGES (DKT. 52)

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant CoreCivic, Inc. ("CoreCivic") moves to dismiss the claims asserted against it in Plaintiff's First Amended Complaint for Damages ("Complaint") (Dkt. 52). This Motion is supported by the following Memorandum of Points and Authorities.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     BACKGROUND.

Valerie Bogle ("Bogle"), a pretrial detainee in the legal custody of Citrus County, Florida, died of dehydration while detained at the Citrus County Detention Facility ("CCDF") on November 2, 2021.  (Dkt. 52 at ¶¶ 1, 156.)  On November 1, 2023, Plaintiff Jacob Cooper—who claims he is Bogle's sole surviving son—as Personal Representative for the Estate of Valerie Susan Bogle, on behalf of the Estate and Survivor Jacob Cooper, initiated this lawsuit by filing a Complaint against CoreCivic, a private corporation that owns and operates CCDF pursuant to a contract with Citrus County.  (*Id.* at ¶¶ 1, 4, 10–11, 21, 31–34.)  Plaintiff alleges that CoreCivic employed the following individual Defendants: Mike Quinn, CCDF's former Warden; Laura Boehm, Licensed Practical Nurse ("LPN"); Tina Mellert, LPN; Ryan Osborn; Candi Hicks, LPN; Anne Britt, LPN; and Mental Health Counselor Sears North.[1,2]  (*Id.* at ¶¶ 12–18.)  Plaintiff also sued Defendants Does 1–15.[3]  (*Id.* at ¶¶ 19–20.)  On March 29, 2024, after a meet and confer between counsel pursuant to Local Rule 3.01(g), Plaintiff filed a First Amended

---

[1] Defendant North was not a CoreCivic employee.

[2] All individually named Defendants are referred to collectively as "Individual Defendants."

[3] Plaintiff alleges that Defendants Does 1–3 are former CoreCivic employees who were fired due to their alleged roles in Bogle's death, and that Defendants Does 4–15 are current or former CoreCivic employees who were "disciplined or counseled" for their roles in Bogle's death.  (*Id.* at ¶¶ 19–20.)

Complaint ("FAC").[4]  (*Id.*)

Plaintiff alleges that on October 29, 2021, Bogle was transported to CCDF by the Citrus County Sheriff's Office after she was arrested for simple battery.  (*Id.* at ¶ 35.)  Plaintiff claims that Bogle was housed in an "isolation cell" in the booking area.  (*Id.* at ¶ 37.)  Over the next four days, Plaintiff alleges that CoreCivic medical personnel (Defendants Boehm, Mellert, Osborn, Hicks, and Britt) failed to examine, assess, monitor, or converse with Bogle, provide her with medical attention, or notify a physician or mental health professional of her condition despite her alleged urgent signs of distress, deterioration, and behavioral signs indicative of a physical or mental health crisis.  (*Id.* at ¶¶ 2, 39, 45–62, 67–70, 72–108, 130–36.)  Plaintiff, however, admits that Bogle was described by these Defendants as disheveled, agitated, anxious, uncooperative, verbally and physically aggressive, and that her behavior was a safety and security risk that prevented medical personnel from completing an intake examination.  (*Id.* at ¶¶ 39, 46–47, 55, 57, 67, 73–74, 79, 87, 130.)

Plaintiff alleges that by November 1, Bogle had removed her clothes, refused to eat and drink, and that her cell smelled like urine and feces.  (*Id.* at ¶¶ 92, 94, 96–98, 126–27.)  Plaintiff alleges that at approximately 4:05 p.m. that day, Defendant North visited Bogle's cell and ordered her to be moved to medical for

---

[4] Counsel also met and conferred regarding CoreCivic's Motion to Dismiss Plaintiff's First Amended Complaint pursuant to Local Rule 3.01(g) but could not agree on a resolution.

15-minute mental health observations given her behavior and to rule out psychosis and/or substance/withdrawal induced psychosis.  (*Id.* at ¶¶ 109–20.)  Plaintiff claims that unidentified officers ignored these orders.  (*Id.* at ¶¶ 121–23, 125.)

On the morning of November 2, Plaintiff alleges that an unidentified CoreCivic "section chief" and "facility manager" looked into Bogle's cell but did not see her.  (*Id.* at ¶¶ 137–40; 142–46.)  At approximately 10:28 a.m., he claims that three officers entered Bogle's cell to dress and escort her to medical.  (*Id.* at ¶ 147.)  Plaintiff claims the officers found her unresponsive on the floor and called a "Code One Medical Response," summoning medical personnel to the cell.  (*Id.* at ¶¶ 148–49.)  An ambulance arrived ten minutes later, and paramedics attempted to resuscitate her until she was pronounced dead at 10:42 a.m.  (*Id.* at ¶¶ 154–55.)

Plaintiff claims that it would have been "obvious to a layperson" that Bogle was at higher risk of death from dehydration because she was 63 years old, and because Defendants allegedly saw her exhibiting signs of severe dehydration, including strong-smelling urine, irritability, confusion, and anxiety. (*Id.* at ¶¶ 100–105.)  Despite Plaintiff's allegations that at least six medical professionals attempted to examine Bogle, he claims that it "would have been clear to CoreCivic 'security' by a lay standard, that a detainee" who was allegedly "exhibiting behavioral signs indicative of a physical or mental health crisis" should be made available for a proper medical evaluation and should not have been left indefinitely

in an isolation cell.  (*Id.* at ¶¶ 63–64.)  Plaintiff also vaguely alleges that CoreCivic "security" should have alerted medical professionals about Bogle's behavior and alleged refusal to submit to a medical examination.  (*Id.* at ¶¶ 63, 65–66, 71.)  He claims that CoreCivic fired four employees and disciplined numerous others after an internal investigation, and that CoreCivic "admitted" that several policies and procedures were not followed.  (*Id.* at ¶¶ 3, 157–63.)

Plaintiff claims that aside from Bogle, eight other people died at CCDF from 2019 to 2021.  (*Id.* at ¶ 167.)  Specifically, he claims that CCDF detainee Lisa Ann Trombley committed suicide in a general population housing unit two weeks prior to Bogle's death, which should have alerted CoreCivic "to review and monitor [its] policies and procedures for monitoring inmates and responding to their ongoing medical conditions, and [] staff's compliance with those policies and procedures" but it chose to do nothing.  (*Id.* at ¶¶ 170–78.)

Plaintiff also claims that CoreCivic knew CCDF was "chronically understaffed," resulting in warnings and fines from Citrus County for CoreCivic's alleged failure to comply with staffing obligations agreed upon in the July 2020 management contract.  (*Id.* at ¶¶ 40, 44, 85, 179–94.)  He claims that CoreCivic's alleged understaffing of CCDF endangered the health and safety of its detainees, including Bogle, and contributed to her death.  (*Id.* at ¶¶ 2, 179, 191.)  Plaintiff also claims that CoreCivic had a "policy, custom, or practice" of regularly detaining

inmates with serious physical or mental health needs in isolation cells for indefinite amounts of time, which deprived them of access to medical care, as a result of chronic understaffing. (*Id.* at ¶¶ 40–44.) He vaguely alleges that CoreCivic understaffed facilities in other states. (*Id.* at ¶¶ 192–94.)

Plaintiff asserts the following claims against CoreCivic: (Count Two) *Monell* claim under 42 U.S.C. § 1983 as Personal Representative; (Count Three) *Monell* claim under § 1983 for failure to train and supervise as Personal Representative; (Count Four) Fourteenth Amendment substantive due process claim in his individual capacity; (Count Five) wrongful death claim pursuant to Florida's Wrongful Death Act ("FWDA"), Fla. Stat. §§ 768.16–768.27, as Personal Representative; (Count Six) Intentional Infliction of Emotional Distress ("IIED") as Personal Representative; and (Count Seven) Negligent Infliction of Emotional Distress ("NIED") as Personal Representative. Plaintiff seeks compensatory damages for the survivors' emotional distress and for the Estate, and for Bogle's pre-death pain and suffering that did not result in death. (*Id.* at ¶¶ 213, 223, 232, 249, 258–60, 271, 274.) He also seeks punitive damages for his § 1983 claims, costs, and reasonable attorneys' fees under 42 U.S.C. § 1988, and "final expenses." (*Id.* at ¶¶ 214–15, 224–25, 234–35, 252, 274.)

## II.   CORECIVIC'S MOTION TO DISMISS SHOULD BE GRANTED.

In considering CoreCivic's Motion to Dismiss, the Court must

accept factual allegations in the Complaint as true and construe them in the light most favorable to the Plaintiff. *Turner v. Williams*, 65 F. 4th 564, 577 (11th Cir. 2023). This is, however, inapplicable to legal conclusions. *See id.* (*quoting Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The alleged facts, having been stripped of all legal conclusions, must make a claim for relief not merely *possible,* but *plausible*." *See id.* (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (emphasis in original). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678. "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombley*, 550 U.S. at 555 (quotations omitted). And threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, at 676, 681.

A.   **Plaintiff Fails to State a *Monell* claim against CoreCivic under 42 U.S.C. § 1983.**

Plaintiff alleges that in operating CCDF, CoreCivic was acting under color of state law for purposes of § 1983. (Dkt. 52 at ¶¶ 11, 33–34.) As such, CoreCivic cannot be held liable for a § 1983 violation under a theory of *respondeat superior*. *Monell v. New York City Dep't of Social Servs.,* 436 U.S. 658, 691 (1978); *see also Ireland v. Prummell*, 53 F. 4th 1274, 1289 (11th Cir. 2022) (holding suit against

private jail contractors is treated as suit against the county and may not be premised on *respondeat superior* liability).   To impose § 1983 liability on CoreCivic, Plaintiff must not only establish an underlying constitutional violation, but that CoreCivic had a custom, practice, or policy that was a moving force behind the violation.   *Monell*, 436 U.S. at 694; *McDowell v. Brown,* 392 F.3d 1283, 1289 (11th Cir. 2004).   These are "rigorous standards." *Bd. of Cty. Comm'rs of Bryan Cty. v. Brown*, 520 U.S. 397, 404 (1997).

First, Plaintiff has not sufficiently pled any underlying constitutional violation.[5]   Aside from conclusory assertions, there are no objective facts establishing that Defendants acted with deliberate indifference to Bogle's purported dehydration, or that Defendants otherwise caused Bogle's death.[6] *Mann v. Taser Int'l, Inc.*, 588 F. 3d 1291, 1306–07 (11th Cir. 2009).

Moreover, to adequately plead a custom or practice, "a plaintiff must establish a widespread practice that, although not authorized by written law or

[5] All Individual Defendants are concurrently moving for the dismissal of Plaintiff's claims on similar grounds.   Rather than duplicate what each Individual Defendant will argue in their respective motions, CoreCivic joins in those motions, particularly to the extent the Individual Defendants argue that Plaintiff fails to plead an underlying constitutional violation against them.

[6] It is unclear if Plaintiff is asserting a conditions of confinement claim.   To the extent he is, Plaintiff has not met the "high bar" necessary to make an "objective showing of a deprivation or injury that is sufficiently serious to constitute a denial of the minimal civilized measure of life's necessities and a subjective showing that the official and a sufficiently culpable state of mind." *Thomas v. Bryant*, 614 F.3d 1288, 1304 (11th Cir. 2010) (quotations omitted); *Evans v. St. Lucie Cty. Jail*, 448 F. App'x 971, 973 (11th Cir. 2011). Plaintiff alleges that Bogle was provided with food and water. (Dkt. 52 at ¶¶ 99, 114.) There are no other allegations demonstrating that she suffered "extreme deprivations," or that any CoreCivic officer subjectively knew of a risk of harm and disregarded that risk.   *Evans*, 448 F. App'x at 973–74.   Thus, any conditions of confinement claim should be dismissed for failure to state a claim under Fed. R. Civ. P. 12(b)(6).

express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Brown v. City of Ft. Lauderdale*, 923 F.2d 1474, 1481 (11th Cir. 1991) (quotations omitted); *see also Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990) ("[D]eprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences."). A widespread practice is deemed authorized by policymaking officials if they knew about it but failed to stop it. *Brown,* 923 F.2d at 1481. Random acts or isolated incidents are not enough. *Depew v. City of St. Marys*, 787 F.2d 1496, 1499 (11th Cir. 1986).

Here, Plaintiff's allegations fail to establish a widespread practice[7] sufficient to put CoreCivic on notice of an unconstitutional custom or practice at CCDF. First, Plaintiff alleges that CoreCivic had a custom or practice of "requiring" detainees with serious medical needs to be housed in isolation cells for indefinite amounts of time, but points to only two incidents involving Bogle and another detainee, Lisa Ann Trombley, where this allegedly occurred. (Dkt. 52 at ¶¶ 40, 171, 177, 208–09.) Two incidents are not enough to establish *Monell* liability. *See Marantes v. Miami-Dade Cnty.*, 649 Fed. App'x 665, 673 (11th Cir. 2016) (two incidents of alleged excessive force is not enough to show that county had longstanding and widespread practice of encouraging excessive force); *Whitaker v.*

---

[7] Plaintiff does not allege that CoreCivic is liable for an officially promulgated policy. His allegations appear to relate to unofficial customs or practices at CCDF.

*Miami-Dade Cnty.*, 126 F. Supp. 3d 1313, 1321 (S.D. Fla. 2015) (four isolated shootings in 2012 cannot establish a widespread practice).  Plaintiff's vague and general allegations that CoreCivic failed to "monitor" and "supervise" detainees with serious medical do not demonstrate a widespread practice.  (Dkt. 52 at ¶ 210.)

Plaintiff also alleges that CoreCivic had a policy, custom, or practice of "deliberately understaffing" CDCF, which prevented adequate monitoring and supervision of detainees with serious medical needs and precluded detainees from being transferred to proper medical housing.  (*Id.* at ¶¶ 209–10.)  He specifically alleges that CCDF was "chronically" understaffed in violation of CoreCivic's contract with Citrus County.  (*Id.* at ¶¶ 40, 179–91.)  But this alleged *contractual* violation does not establish a *constitutional* violation, particularly because there is no constitutional right to a certain number of staff at CCDF.  And while the FAC alleges that Citrus County warned and fined CoreCivic for failure to comport with the contract's staffing provisions, it does *not* allege specific facts showing that CCDF consistently delayed and/or failed to provide medical care to detainees *due to* understaffing that was so "obvious, flagrant, rampant and of continued duration" to put CoreCivic on notice of the alleged issue.  (*Id.* at ¶¶ 2, 85, 179–91, 209–13) *Brown*, 906 F. 2d at 671.

Aside from conclusory assertions, Plaintiff has not demonstrated that CoreCivic had a "deliberate intent" to understaff CCDF.  *See McDowell*, 392 F.3d

at 1291.  Indeed, there are only a handful of general references to "understaffing" in the FAC, and only a single allegation where Plaintiff specifically alleges that CoreCivic's failure to procure a second officer to assist Defendant Osborn in conducting a medical examination was due, in part, to understaffing.  (Dkt. 52 at ¶ 85.)  A single allegation is not enough, and Plaintiff's conclusory assertion that Bogle's health and safety were otherwise threatened due to understaffing does not rise above the speculative level.  *Twombley*, 550 U.S. at 555.  Nor does it establish the culpability requirement necessary to show deliberate intent.  *See McDowell*, 392 F.3d at 1291–92.  Furthermore, aside from a single conclusory assertion (*see* Dkt. 52 at ¶ 213), there are *no* allegations that CCDF's alleged understaffing was the "moving force" behind the alleged constitutional violation or that CCDF's alleged understaffing caused Bogle's death.  *Bryan Cty.*, 520 U.S. at 404.  Indeed, Plaintiff alleges that the constitutional violations were caused by understaffing *in part*, which is patently insufficient to establish a "moving force."  (Dkt. 52 at ¶¶ 2, 85, 209.)   Finally, Plaintiff baldly alleges that CoreCivic chronically understaffed facilities in other states to "minimize operating costs and increase profits," which is not only pure conjecture, but is unsupported by sufficient allegations to demonstrate a custom, practice, or policy, or that CoreCivic was aware of any alleged understaffing issues at any other CoreCivic facility.   (*Id.* at ¶¶ 192–94.)

Plaintiff also attempts to show a custom or practice by alleging that eight other inmates died at CCDF from 2019 through 2021.  (Dkt. 52 at ¶¶ 167–69.) Aside from allegations regarding Ms. Trombley, the FAC is devoid of *any* facts about seven of those deaths.  (*See id.*)  There are no facts demonstrating that the deaths were connected, or that they involved similar issues regarding the alleged failure to monitor or provide medical care, isolation cells, understaffing, or supervision/training issues.  (*Id.*)

With respect to the alleged suicide death of Ms. Trombley, Plaintiff also fails to plead facts showing that her death was caused by any delay and/or failure to monitor or to provide medical care at CCDF due to understaffing or inadequate supervision or training.  (*Id.* at ¶¶ 170–75.)  Furthermore, to establish a custom or practice, Plaintiff must establish the existence of a "pattern of *similar violations*." *Ireland*, 53 F. 4th at 1290 (emphasis added).  Ms. Trombley's suicide is not factually similar to Bogle's death from dehydration.  Indeed, Plaintiff alleges that Ms. Trombley was housed in general population, not in an isolation cell, when she died.  (*Id.* at ¶¶ 170–75.)  Thus, Plaintiff's allegations regarding other deaths are speculative and conclusory and do not establish an unconstitutional custom, practice, or policy, or that CoreCivic was on notice.  *Iqbal*, 556 U.S. at 679.

Thus, Plaintiff seeks to impose liability on CoreCivic based upon two sporadic events, which is insufficient to state a *Monell* claim.  *See Marantes*, 649

Fed. App'x at 673.   Accordingly, the FAC fails to sufficiently allege that CoreCivic was deliberately indifferent or that it had an unconstitutional custom, practice, or policy to establish *Monell* liability against CoreCivic, much less that any custom, practice, or policy was the moving force behind any alleged constitutional violation.[8]   *See McDowell*, 392 F.3d at 1290–94.   Plaintiff's *Monell* claim against CoreCivic should be dismissed.

## B.   Plaintiff Fails to Establish *Monell* Liability Under a Failure to Train and Supervise Theory.

There are only "limited circumstances" where an allegation of failure to train or supervise can form the basis of liability under § 1983.   *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998).   Plaintiff must establish that CoreCivic inadequately trained or supervised its employees, the failure to train or supervise was a CoreCivic policy, and that the policy caused CoreCivic's employees to violate Bogle's constitutional rights.   *Id.*   To establish deliberate indifference, Plaintiff must establish that CoreCivic "knew of a need to train and/or supervise in a particular area and [that it] made a deliberate choice not to take any action."

---

[8] The Complaint also alleges that CoreCivic conducted a post-incident investigation, determined certain policies were violated, disciplined and/or terminated certain employees, and re-trained other employees. (Dkt. 52 at ¶¶ 157–65.)   Post-incident investigations, findings, disciplinary actions, and re-training do not show that CoreCivic had subjective notice of its employees' alleged policy violations and the need for discipline and re-training of its employees *at the time* of Bogle's death.   Nor does it establish a widespread practice required to state a *Monell* claim. *See Connick*, 563 U.S. at 63, n.7 ("[C]ontemporaneous or subsequent conduct cannot establish a pattern of violations that would provide notice . . . and the opportunity to conform to constitutional dictates."); *see Shehada v. Tavss*, 965 F. Supp. 2d 1358, 1374 (S.D. Fla. 2013) (investigation or disciplinary action following subject incident cannot support *Monell* liability because after-action conduct could not have been the legal cause of the plaintiff's injury).

*Knight through Kerr v. Miami-Dade County*, 856 F.3d 795, 820 (11th Cir. 2017). "[W]ithout notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train and supervise." *Gold*, 151 F.3d at 1351.

Significantly, "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). The failure to train "must amount to 'deliberate indifference to the rights of persons with whom the untrained employees come into contact.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 388 (1989)). "[S]howing merely that additional training would have been helpful in making difficult decisions does not establish [] liability." *Connick*, 563 U.S. at 68. Rather, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Bryan Cty.*, 520 U.S. at 409. And Plaintiff must show that the training deficiencies caused the constitutional deprivation. *Canton*, 489 U.S. at 391. Thus, failure-to-train claims present "difficult problems of proof." *Id.* at 406.

Plaintiff alleges that CoreCivic "chose" not to train and supervise its employees to adequately monitor detainees held in isolation cells for extended periods, despite knowing of the need to train and supervise following the death of Ms. Trombley, and that CoreCivic's failure to train and supervise its employees

amounts to deliberate indifference.  (Dkt. 52 at ¶¶ 219-21.)  As stated above, there are no allegations demonstrating that the circumstances surrounding Ms. Trombley's suicide were similar to Bogle's death by dehydration, and the FAC does not demonstrate that CoreCivic was on notice that its training and/or supervision were inadequate.  Aside from a handful of conclusory allegations, there is not a single, specific allegation establishing that CoreCivic failed to train or supervise its employees, that there was a pattern of constitutional violations by CoreCivic employees because of their inadequate training or supervision, that CoreCivic was on notice that its training program or supervision were allegedly deficient, or that any alleged failure to train or supervise caused Bogle's death. (Dkt. 52 at ¶¶ 219-23) *see Townsend v. City of Boca Raton, Fla.*, 2023 WL 5595910, at *11 (S.D. Fla. Aug. 14, 2023) (finding plaintiff could not state a *Monell* claim where amended complaint failed to allege city was on notice of need to improve training or supervision and deliberately chose to ignore a prior history or widespread practice of constitutional abuse).  Moreover, the FAC is devoid of allegations demonstrating that CoreCivic chose to "minimize" its training to cut costs and increase profits.  (*Id.* at ¶ 222.)  Plaintiff cannot establish *Monell* liability against CoreCivic based upon a failure to train or supervise theory.

**C.    Plaintiff's Fourteenth Amendment Substantive Due Process Claim Is Not Cognizable.**

Plaintiff alleges that Defendants violated his Fourteenth Amendment substantive due process rights by depriving him of his right to companionship and society with his mother. (Dkt. 52 at ¶ 228.) This claim is not cognizable.

It is well established that a § 1983 claim must be based on a deprivation of Plaintiff's *own* constitutional rights, not on a deprivation incidental to Defendants' alleged conduct. *See Robertson v. Hecksel*, 420 F.3d 1254, 1259 (11th Cir. 2005) (finding that there is no substantive due process right between a mother and her adult child where the alleged deprivation was incidental to the defendant's actions); *Meus v. Geo Group*, 2012 WL 42406, at *3 (S.D. Fla. Jan. 9, 2012) (dismissing § 1983 claim for failure to state a claim where it was unclear whose rights plaintiffs sought to vindicate, what constitutional right was allegedly violated, and whether the decedent was a minor child, explaining: "Indeed, if the decedent was not a minor, the parents of the decedent cannot bring claims on behalf of the decedent pursuant to section 1983 or state law wrongful death."); *Debrosse v. Bradshaw*, 2010 WL 773826, at *3 (S.D. Fla. Mar. 5, 2010) (dismissing claim by mother for death of minor child, finding incidental deprivation of the mother's constitutional rights caused by the underlying deprivation of the decedent's rights was insufficient to state a claim); *Vaughn v. City of Orlando*, 2008 WL 151885, at *4 (M.D. Fla. Jan. 15, 2008) (dismissing complaint for failure to allege violation of plaintiffs' own individual constitutional

rights rather than the decedent's rights). Here, any alleged deprivation Plaintiff suffered was merely incidental to Defendants' alleged violation of Bogle's constitutional rights rather than his own. Moreover, Plaintiff, as an adult child, does not have a substantive due process interest in a relationship with his mother. *See Robertson*, 420 F.3d at 1262 ("While the parent/adult child relationship is an important one, the Constitution does not protect against all encroachments by the state onto the interests of individuals."). Thus, his substantive due process claim should be dismissed with prejudice at the outset.

Even if Plaintiff had a cognizable Fourteenth Amendment substantive due process claim, he still faces a "high bar" because "conduct by a government actor will rise to the level of a substantive due process violation only if the act can be characterized as arbitrary or conscience shocking in a constitutional sense." *Maddox v. Stephens*, 727 F.3d 1109, 1119 (11th Cir. 2013) (quotations omitted). "Even intentional wrongs seldom violate the Due Process Clause . . . and only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *Id.* (internal quotations and citations omitted). Plaintiff's allegations against CoreCivic cannot be characterized as "arbitrary or conscience shocking in a constitutional sense." *Id.* This is particularly true where, as here, Plaintiff has not adequately pled a *Monell* claim against CoreCivic. Thus, even if Plaintiff's

substantive due process claim was cognizable, he has failed to sufficiently plead it against CoreCivic, which warrants dismissal.

> **D.  Plaintiff's Wrongful Death Claim Should be Dismissed.** [9]
>
> > **a.  Plaintiff Failed to Comply with Fla. Stat. §§ 766 *et seq*.**

To the extent Plaintiff's wrongful death claim is based on medical negligence, that claim must be dismissed because Plaintiff failed to comply with the pre-suit requirements contained in Fla. Stat. §§ 766, *et seq*. ("Chapter 766").

Chapter 766 imposes certain pre-suit requirements upon plaintiffs who wish to bring medical negligence actions under Florida law.[10]  *See Kukra v. Mekras*, 679 So. 2d 278, 280–81 (Fla. 1996); Fla. Stat. §§ 766.104, 766.106, 766.201, 766.203. Before filing any claim for personal injury or wrongful death arising from medical negligence, Plaintiff was required to conduct an investigation and send Defendants

---

[9] The Complaint alleges that Defendants are liable for constitutional violations constituting "wrongful acts" actionable under the FWDA. (Dkt. 1, ¶¶ 212, 213, 219.)  This is redundant of Plaintiff's § 1983 claims in Counts One and Two, and for the reasons already stated, CoreCivic cannot be held vicariously liable for unconstitutional conduct under § 1983.

[10] Chapter 766 is limited to claims for "medical negligence" or "medical malpractice," which are defined as claims "arising out of the rendering of, or the failure to render, medical care services." Fla. Stat. § 766.106(1)(a). "[F]or a claim to sound in medical malpractice, the act from which the claim arises must be directly related to medical care or services, which require the use of professional judgment or skill." *Nat'l Deaf Acad., LLC v. Townes*, 242 So. 3d 303, 311 (Fla. 2018).  Moreover, § 766.110(1) imposes a duty on "[a]ll health care facilities...to assure comprehensive risk management and the competence of their medical staff and personnel through careful selection and review." These duties include the adoption of written procedures for staff selection, periodic review of the care provided by the facility's medical staff, and the initiation of a comprehensive risk management program. Fla. Stat. § 766.110(1)(a)–(c). Chapter 766 also applies to negligent supervision and training claims.  *See, e.g., Ireland*, 53 F. 4th at 1302–04 (negligent supervision claim against prison medical contractor was inextricably connected to alleged negligent medical treatment of plaintiff, and therefore the negligent supervision claim was a medical negligence claim under Chapter 766).

a notice of intent to sue, along with a verified written medical expert opinion. Fla. Stat. §§ 766.104(1), 766.106(2), 766.201(2)(a), 766.203.  Plaintiff's attorneys were required to file a certificate of counsel verifying that they conducted a reasonable investigation and there is a good faith belief that medical negligence occurred.  Fla. Stat. § 766.104(1).  Compliance with these requirements is considered a condition precedent for filing a medical negligence action.  *See Ingersoll v. Hoffman,* 589 So. 2d 223, 224 (Fla. 1991*).*  Florida law mandates the dismissal of a medical negligence claim when the pre-suit requirements are not met.  Fla. Stat. § 766.206(2); *Johnson v. McNeil*, 278 F. App'x 866, 872 (11th Cir. 2008).

Plaintiff's claims against the Individual Defendants arise out of their alleged failure to render and/or supervise medical care.  (Dkt. 52 at ¶¶ 45–156.)  The FAC further alleges that CoreCivic failed to adequately supervise and train the Individual Defendants in the provision of medical care.  (*Id.* at ¶¶ 240–47.)  Thus, Plaintiff's wrongful death claim arises out of medical negligence, and is subject to Chapter 766's pre-suit screening and notice requirements.  *See Ireland*, 53 F. 4th at 1303.  The FAC, however, does not allege any facts establishing Plaintiff's compliance with Chapter 766's pre-suit requirements.  There is no evidence that Plaintiff sent CoreCivic a notice of intent to sue or a verified written medical expert opinion as required by Fla. Stat. §§ 766.104(1) and 766.203(2).  Nor did Plaintiff's counsel file a certificate of counsel.  Fla. Stat. § 766.104.

Thus, to the extent Plaintiff's wrongful death claim arises out of medical negligence, his failure to comply with Chapter 766's pre-suit requirements is fatal to that claim. Because Plaintiff cannot assert a medical negligence claim against any Individual Defendant, his wrongful death claim against CoreCivic based on vicarious liability should also be dismissed.[11]  *See Trump v. Clinton*, 626 F. Supp. 3d 1264, 1318 (S.D. Fla. 2022) (under Florida law, "[i]f the employee is not liable, the employer is not either.").

### b. The FAC Fails to State a Negligent Supervision and Training Claim.

Sovereign immunity is not waived for discretionary functions like supervision and training. *See Lewis v. Cty. of St. Petersburg*, 260 F.3d 1260, 1264-66 (11th Cir. 2001); *see also Whitaker,* 126 F. Supp. 3d at 1330 ("Florida's sovereign-immunity waiver does not apply when the challenged acts are discretionary rather than operational.") (internal quotations omitted). CoreCivic is entitled to immunity on these claims.

Nevertheless, to state a claim for negligent supervision, Plaintiff must allege facts sufficient to show that CoreCivic had prior knowledge that an employee was unfit, and unreasonably failed to investigate the employee and take corrective

---

[11] The applicable statute of limitations for medical negligence is two years from the time the incident giving rise to the action occurred. Fla. Stat. § 95.11(4)(b). Because the applicable two-year limitations period has expired, leave to amend to remedy the non-compliance with Chapter 766 would be futile and the dismissal must be with prejudice. *See* Fla. Stat. § 766.206(2); *Johnson*, 278 F. App'x at 872; *Williams*, 58 So. 2d at 983.

action. *Adler v. WestJet Airlines, Ltd.*, 31 F. Supp. 3d 1381, 1387 (S.D. Fla. 2014). Florida law also "requires that an employee's wrongful conduct be committed *outside* the scope of employment." *Buckler v. Israel*, 680 F. App'x 831, 834 (11th Cir. 2017); *accord Acts Retirement-Life Cmtys. Inc. v. Estate of Zimmer*, 206 So. 3d 1123, 116–117 (Fla. 4th DCA 2016).

Here, Plaintiff alleges the Individual Defendants acted *within* the scope of their employment (*see* Dkt. 52 at ¶¶ 12–20, 247, 269), which necessitates dismissal of Plaintiff's negligent supervision claim as a matter of law.  *See Buckler*, 680 F. App'x at  834; *City of Boynton Beach v. Weiss*, 120 So. 3d 606, 610 (Fla. 4th DCA 2013) ("Officer One acted within the course and scope of his employment at all times. Because of this, the negligent retention/supervision claim must fail by operation of law.").  And the Complaint is devoid of allegations that CoreCivic was on prior notice that any Individual Defendant or any other CoreCivic employee was unfit, but unreasonably failed to investigate the employee and take corrective action.  Plaintiff's negligent supervision claim should be dismissed.

Plaintiff's negligent training claim also fails.  To state a claim for negligent training, Plaintiff must show that CoreCivic was negligent in its implementation or operation of a training program and that this negligence caused the injury. *Mercado v. City of Orlando*, 407 F.3d 1152, 1162 (11th Cir. 2005).  Aside from general and conclusory allegations, there are no specific allegations demonstrating

that CoreCivic was negligent in its operation of a training program, or that any training program or lack thereof caused Bogle's death.  Nor are there specific allegations against any Individual Defendant to establish that they were negligent *because of* their training.  Indeed, the FAC alleges that CoreCivic had policies and processes in place regarding medical care (Dkt. 52 at ¶¶ 43, 48, 53, 107) and conducted training and retraining (*id.* at ¶¶ 163–64, 220).  These allegations do not show a violation of its duty to train, but rather the opposite.  Plaintiff's negligent training claim should be dismissed.

> ### c.    The FAC is Devoid of Facts to Establish CoreCivic's Negligence.

The allegations that CoreCivic kept Bogle in an isolation cell despite allegedly knowing of her "serious medical needs" are really just claims for medical negligence.  (Dkt. 52 at ¶¶ 40–44, 75, 81, 89, 132, 191, 208.)  But because Plaintiff is precluded from asserting medical negligence claims, it is unclear what bases Plaintiff's wrongful death claim relies upon if not medical negligence.  (*See id.* at ¶¶ 240–49.)[12]  The FAC is devoid of specific allegations demonstrating above the speculative level that any other CoreCivic employee breached any duty to

---

[12] Indeed, Plaintiff's wrongful death claim alleges that Defendants were deliberately indifferent to Bogle's medical needs, that the Individual Defendants failed to document and monitor Bogle's serious medical condition, failed to summon medical help, and failed to ensure she received proper medical care. (*Id.* at ¶¶ 240–44.)  Plaintiff claims that CoreCivic negligently failed to train and supervise its employees to ensure that all detainees exhibiting signs of distress receive proper medical care.  (*Id.* at ¶ 245.)

Bogle.[13]  Indeed, Plaintiff's allegations regarding unidentified "security" personnel are speculative and vague and are based upon the impermissible *assumption* that "it would have been obvious" to a layperson that Bogle needed to be made available for a medical evaluation or that she was suffering from serious physical or mental health crisis.  (*Id.* at ¶¶ 63–66, 71, 94, 97–100, 104–05) *Iqbal*, 556 U.S. at 664 (conclusions are not entitled to the assumption of truth).  There are *no* specific allegations demonstrating that it was clear to any CoreCivic employee that Bogle was at risk of dehydration or required urgent medical attention to establish CoreCivic's vicarious liability for wrongful death outside of a medical negligence context.  Nor are there any specific allegations that any CoreCivic employee knew Bogle had refused to eat or drink.  And Plaintiff's allegations that medical personnel repeatedly attempted to examine Bogle belie his claims that security personnel failed to report her behavior or make her available for a medical examination.  (Dkt. 52 at ¶¶ 39, 45–91, 109–20, 130–35.)   Moreover, as stated above, Plaintiff cannot demonstrate that CoreCivic's alleged understaffing proximately caused Bogle's death.   Plaintiff's wrongful death claim against CoreCivic should be dismissed for failure to state a claim.

### E.      Plaintiff's IIED Claim Should Be Dismissed.

---

[13] Plaintiff specifically alleges that on November 2, 2021, a "facility manager" and "section chief" looked into Bogle's cell but did not see Bogle inside.  Because Plaintiff alleges they did not see her, this does not amount to a breach of any duty.  (*Id.* at ¶¶ 137–46.)

To state a claim for IIED, Plaintiff must establish that CoreCivic employees engaged in intentional or reckless conduct that is "outrageous" in that it goes "beyond all bounds of decency" and is "utterly intolerable in a civilized community" which caused the victim severe emotional distress. *Kim v. Jung Hyun Chang*, 249 So. 3d 1300, 1305 (Fla. 2d DCA 2018). "While there is no exhaustive or concrete list of what constitutes outrageous conduct, Florida common law has evolved an extremely high standard." *Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1339 (S.D. Fla. 2012); *see also Corbin v. Prummell*, 655 F. Supp. 3d 1143, 1165 (M.D. Fla. 2023) ("It is not enough that the intent is tortious or criminal; it is not enough that the defendant intended to inflict emotional distress; and it is not enough if the conduct was characterized by malice or aggravation which would entitle the plaintiff to punitive damages for another tort.").

Here, aside from conclusory assertions and recitations of the elements of an IIED claim, the FAC does not contain facts sufficient to state a claim for IIED against CoreCivic or any of its employees. (*See* Dkt. 52 at ¶¶ 255–60.) There are no allegations demonstrating intentionality and/or recklessness, or that emotional distress suffered by Bogle, if any, was severe. Nor do the allegations meet the "extremely high" bar required to demonstrate outrageousness. In addition, because Bogle's death-related injuries are statutorily subsumed into the wrongful death claim, *see* Fla. Stat. §§ 768.20, the IIED claim is not a separate survival claim and

must be dismissed.  *See Groover v. Polk County Board of Cty. Commiss'rs.*, 570 F. Supp. 3d 1134, 1153–1154 (M.D. Fla. 2021) (dismissing negligence claims which were subsumed into FWDA).

Plaintiff also confusingly alleges that, as a direct and proximate result of the Defendants' allegedly outrageous behavior, "Plaintiff's survivors" have suffered severe injuries.  (Dkt. 52 at ¶ 257.)  It is unclear who Plaintiff is referring to by "Plaintiff's survivors."  (*Id.*)  If he is referring to himself, he cannot assert this claim as Personal Representative given that he lacks standing to sue for the benefit of an individual outside of the wrongful death context.  *See* Fla. Stat. § 733.612(20) (limiting Personal Representative's authorized lawsuits to protect the estate, the decedent's property, or the personal representative); Fla. Stat. § 768.20 (Personal Representative has sole authority to bring FWDA claim).  To the extent he is alleging an IIED claim in his individual capacity, there are no allegations that Defendants directed any conduct at him to support this claim.  Thus, Plaintiff's IIED claim should be dismissed.

## F.    Plaintiff's NIED Claim Should Be Dismissed.

A person may maintain a cause of action for NIED when they suffer a *physical injury* as a result of emotional distress arising from witnessing the death or injury of a loved one.  *Zell v. Meek*, 665 So. 2d 1048, 1050 (Fla. 1995).  If a plaintiff has suffered a physical impact from an external force, recovery for

emotional distress stemming from the incident during which the impact occurred is permitted. *Malverty v. Equifax Info. Servs., LLC,* 407 F. Supp. 3d 1257, 1265 (M.D. Fla. 2019) (internal citation omitted). If, however, a plaintiff has not suffered a physical impact, emotional distress must be manifested by physical injury, the plaintiff must have been involved in the incident, and he must have suffered the emotional distress and accompanying physical impairment within a short time of the incident. *Id.* at 1265–66.

Plaintiff is asserting a NIED claim as Personal Representative. Indeed, he claims that *Bogle* suffered physical injuries at CCDF which caused her psychological trauma, and that those injuries were caused by Defendants' alleged negligence. (Dkt. 52 at ¶¶ 263–71.) Plaintiff cannot assert an NIED claim based upon Bogle's own injuries and death. NIED claims are meant to compensate those who have *witnessed* the death or serious injury of a loved one, not to compensate those who have died. *See Zell*, 665 So. 2d at 1050. And, for the reasons stated above, Plaintiff cannot assert a separate survival claim for NIED where her death-related injuries are statutorily subsumed into the wrongful death claim. *See Groover*, 570 F. Supp. 3d at 1153–54.

Moreover, for the reasons stated above, Plaintiff cannot assert a claim on behalf of "Decedent's Survivor" as Personal Representative. *See* Fla. Stat. § 733.612(20). If Plaintiff is attempting to assert an NIED claim in his individual

capacity, his claim fails because there are no allegations establishing that he witnessed or was involved the event causing Bogle's death, or that he suffered any physical impact or physical injury resulting from emotional distress. (Dkt. 52 at ¶¶ 263–71) *Malverty,* 407 F. Supp. 3d at 1265; *see also Godelia v. Doe 1*, 881 F. 3d 1309, 1322–23 (11th Cir. 2018) (dismissal of NIED claim required where plaintiff failed to allege physical injury). The NIED claim should be dismissed.

### G.   Plaintiff is not Entitled to Pre-Death Pain and Suffering Damages.

Under the FWDA, "[w]hen a personal injury to the decedent results in death, no action for the personal injury shall survive, and any such action pending at the time of death shall abate." Fla. Stat. § 768.20. Indeed, the FWDA contemplates a "transfer of pain and suffering damage from the decedent to the survivors." *Capone v. Phillip Morris USA, Inc.*, 116 So. 3d 363, 375 (Fla. 2013). It does not provide for the survival of a decedent's claim for pre-death pain and suffering. *Martin v. United Sec. Srvcs., Inc.*, 314 So. 2d 765, 770 (Fla. 1975)

Here, Plaintiff requests pre-death pain and suffering damages for injuries that did not result in death. (Dkt. 52 at ¶ 274(c).) Plaintiff's attempt at parsing out damages based on alleged injuries resulting in and not resulting in death is not only virtually impossible, it is not permitted by the statute and is nevertheless improper given that Plaintiff alleges that Bogle's injuries resulted in her death. Fla. Stat. § 768.20. Accordingly, Plaintiff's demand for pre-death pain and suffering damages

that did not result in death should be dismissed.

Furthermore, the FWDA controls the damages available in a § 1983 action where the constitutional deprivation resulted in death.  *Sharbaugh v. Beaudry*, 267 F. Supp. 3d 1326, 1334–35 (N.D. Fla. 2017); *see also Est. of Whidden v. Armor Corr. Health Servs., Inc.*, 2019 WL 1258978, at \*5 (M.D. Fla. Sept. 5, 2019) ("[U]nder 42 U.S.C. § 1988, the [FWDA] controls the damages available in a § 1983 action where the constitutional deprivation resulted in death.").  Because the FWDA does not provide for survival of pre-death pain and suffering damages, Plaintiff's request for recovery of pre-death pain and suffering damages in connection with his § 1983 claims should also be dismissed.

### H.  CoreCivic is Entitled to Sovereign Immunity for All State Law Claims Under Fla. Stat. § 768.28(9)(a).

Under Fla. Stat. § 768.28(9)(a), "[a]n officer, employee, or agent of the state or any of its subdivisions may not be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of his or her employment or function, unless such officer, employee, or agent acted in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."  Limited sovereign immunity "is available for private parties involved in contractual relationships with the state if those parties are determined

to be acting as agents of the state." *G4S Secure Solutions (USA), Inc. v. Morrow*, 210 So. 3d 92, 94 (Fla. 2d DCA 2016).

Plaintiff alleges that CoreCivic operated CCDF pursuant to a contract with Citrus County and, in doing so, was acting under color of state law by performing "functions as a jailer that are traditionally the exclusive prerogative of the state or county." (Dkt. 52 at ¶¶ 11, 31–34.) Thus, Plaintiff alleges that CoreCivic, as an agent of Citrus County, is liable, which implicates § 768.28(9)(a). (*Id.*) Aside from conclusory assertions, there are no allegations demonstrating that CoreCivic or any of its employees acted in bad faith or with a malicious purpose. CoreCivic is, therefore, entitled to sovereign immunity for Plaintiff's state tort claims under § 768.28(9)(a).

## I.   Plaintiff is Not Entitled to Punitive Damages.

The FAC is devoid of allegations demonstrating that CoreCivic's alleged conduct involved reckless or callous indifference to the rights of others or that it were otherwise motivated by evil motive or intent. *Hooks v. Brewer,* 818 F. App'x 923, 931 (11th Cir. 2020) (quoting *Smith v. Wade*, 461 U.S. 30, 55 (1983)). Plaintiff's claim for punitive damages under § 1983 should be dismissed.

## J.   Doe Defendants 1–15 Should Be Dismissed.

Fictitious-party pleading is not permitted in federal court. *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010). There is a limited exception where a

plaintiff's description of a doe defendant "is so specific as to be at the very worst, surplusage." *Id.* The FAC is devoid of any specific allegations against any Doe Defendant, and none of the Doe Defendants are described with adequate specificity to fall within this limited exception, which warrants their dismissal. (Dkt. 52 at ¶¶ 19–20, 121–23, 125, 158, 160, 243) *See Vielma v. Gruler*, 347 F. Supp. 3d 1122, 1137–39 (M.D. Fla. 2018) (dismissing all doe defendants given complaint's failure to include identifying information specific to any individual doe defendant).

## III.   CONCLUSION.

For the foregoing reasons, CoreCivic's Motion to Dismiss should be granted.

DATED this 13th day of May, 2024.

STRUCK LOVE BOJANOWSKI & ACEDO, PLC


By   /s/ Dana Keene
       Daniel P. Struck, AZ Bar No. 012377*
          Lead Counsel
       Dana M. Keene, AZ Bar No. 033619*
       3100 West Ray Road, Suite 300
       Chandler, Arizona  85226
       Tel.:  (480) 420-1600
       dstruck@strucklove.com
       dkeene@strucklove.com
       *Admitted Pro Hac Vic

       *Attorneys for Defendant CoreCivic, Inc.*

## <u>LOCAL RULE 3.01(G) CERTIFICATION</u>

I have conferred with Plaintiff's counsel by telephone and electronic correspondence and represent that Plaintiff opposes CoreCivic's Motion to Dismiss Plaintiff's First Amended Complaint for Damages (Dkt. 52).

/s/ Dana Keene

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Timothy A. Scott             tscott@mckenziescott.com
Nicolas O. Jimenez           njimenez@mckenziescott.com
Lauren M. Williams           lwilliams@mckenziescott.com
James V. Cook                cookjv@gmail.com
*Attorneys for Plaintiff*

Sammy Epelbaum              sammy.epelbaum@bipc.com
Jesse Stolow                jesse.stolow@bipc.com
Hala A. Sandridge           hala.sandridge@bipc.com
*Attorneys for Defendant Anne Britt*

Rhonda Beesing              rhonda.beesing@csklegal.com
Elisabeth A. Fontugne       elisabeth.fontugne@csklegal.com
*Attorneys for Defendant MHC William Sears North*

Ethen R. Shapiro            ethen.shapiro@hwhlaw.com
Rachel E. Eilers            rachel.eilers@hwhlaw.com
*Attorneys for Defendant Candi Hicks, LPN*

Richards H. Ford            orlcrtpleadings@wickersmith.com
Peter Bartoszek             orlcrtpleadings@wickersmith.com
*Attorneys for Defendant Ryan Osborn*

John R. Owens               service-jowens@bankerlopez.com
John W. Cullen              jcullen@bankerlopez.com
*Attorneys for Defendant Warden Mike Quinn*

William G.K. Smoak          bsmoak@atslawyers.com
Sharon C. Britton           sbritton@atslawyers.com
*Attorneys for Defendant Tina Mellert*

Richard C. Alvarez          rick.alvarez@akerman.com
Neema M. Monfared           neema.monfared@akerman.com

Keenan Molaskey                    keenan.molaskey@akerman.com
*Attorneys for Defendant Laura Boehm*


/s/ Dana Keene